Alexander BLANEY, Plaintiff–Appellant,

v.

UNITED STATES of America, United States Air Force, Lin Bartucca, et al., Defendants–Appellees.

No. 93–3737.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1994.

Decided Sept. 2, 1994.

Arthur Heitzer (argued), Jeffrey A. Kingsley, Milwaukee, WI, for plaintiff-appellant.

James L. Santelle, Asst. U.S. Atty. (argued), Milwaukee, WI, for defendants-appellees.

Before POSNER, Chief Judge, and RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Alexander Blaney brought an action in the district court to enforce a settlement agreement against his former employer, the United States Air Force. The district court dismissed his complaint for lack of subject matter jurisdiction, *see* Fed.R.Civ.P. 12(b)(1),

and Mr. Blaney now appeals. For the reasons that follow, we affirm the judgment of the district court.

### I

Mr. Blaney was a civilian employee with the United States Air Force from October 2, 1972 to May 12, 1989. At that time, he resigned from his position. After an unsuccessful attempt to withdraw his resignation, he sought review before the Merit Systems Protection Board (the "MSPB" or "Board") on June 1, 1989. Mr. Blaney alleged that his resignation had not been voluntary because of harassment and pressure he had experienced at work that had aggravated his medical condition, lupus, and thus caused him to resign. With the assistance of an administrative judge, Mr. Blaney and his employer reached a settlement on August 29, 1989. Among its provisions, the settlement provided that Mr. Blaney would be allowed to withdraw his resignation and return to work on September 5, 1989. Although the agreement was reduced to writing and signed by both parties, the administrative judge did not enter it into the record when she dismissed the case: "Because the Board has not established its jurisdiction over the appellant's appeal, this settlement agreement is not submitted into the record before the Board for enforcement purposes." R. 1, Exh. 1 at 2. Mr. Blaney reported for work on September 5, just as he was supposed to do under the settlement agreement. The Air Force, however, refused to reinstate him. The defendants concede that the refusal to allow Mr. Blaney to resume his employment constituted a breach of the settlement agreement, and they have offered no excuse—then or now—for that breach.

On May 12, 1992, Mr. Blaney brought an action in the district court to enforce the settlement decree and to obtain damages for the defendants' breach of it. He asserted jurisdiction on several grounds, including the federal mandamus statute, 28 U.S.C. § 1361, the Civil Service Reform Act (the "CSRA"), 5 U.S.C. § 1101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*[1] The

---

1. Because Mr. Blaney does not appeal the district court's conclusions concerning the lack of

jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), or the federal question stat-

magistrate judge, sitting as the district court by consent of the parties, *see* 28 U.S.C. § 636(c), held that none of these statutes provided subject matter jurisdiction over the case, and thus dismissed the case for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Addressing the mandamus statute, the court noted that Mr. Blaney asserted only that the defendant-officers owed him a contractual duty. Mr. Blaney did not claim that the officers were acting inconsistently with their duties under the United States Constitution or a federal statute or regulation. Relying upon cases such as *Bobula v. United States Department of Justice,* 970 F.2d 854, 859–60 (Fed.Cir.1992), the court stated that, a contractual duty alone cannot provide mandamus jurisdiction. It therefore concluded that, because Mr. Blaney sought enforcement of a contractual duty, mandamus could not provide relief.

The court then turned to Mr. Blaney's arguments under the CSRA and the Rehabilitation Act. Mr. Blaney submitted that jurisdiction existed under Title VII to enforce the settlement agreement because his was a "mixed case"; it involved nondiscriminatory claims arising under the CSRA and discriminatory claims arising under the Rehabilitation Act. *See* 5 U.S.C. §§ 7702 & 7703(b)(2) (providing for judicial review of "mixed cases" under certain circumstances). The district court held, however, that Mr. Blaney's decision to proceed with his complaint before the MSPB rather than before the Equal Employment Opportunity Commission (the "EEOC") under the applicable discrimination statute required that he exhaust his administrative remedies with the MSPB before presenting them for review in the district court. Thus, the court held that, when the defendants breached the settlement agreement, it was incumbent upon Mr. Blaney to inform the MSPB of the breach, despite the fact that, at the time of its execution, the settlement agreement had not been entered into the record. In the alternative, the court concluded that, even assuming *arguendo* that it had the authority to enforce the settlement agreement under 5 U.S.C.

§ 7703(b), Mr. Blaney had failed to comply with its provisions because he had not commenced the present action "within 30 days" of the breach, 5 U.S.C. § 7703(b)(1) & (2); instead, he waited over two and one-half years.

Finally, the court also rejected Mr. Blaney's attempt to rely on 5 U.S.C. § 7702(e)(1)(B), which confers federal jurisdiction if 120 days pass before the MSPB provides a "judicially reviewable action." It stated that that provision was designed to protect litigants from administrative delay, not to provide them with a way to make an end-run around the CSRA.

II

On appeal, Mr. Blaney submits that the district court erred in determining that jurisdiction did not exist under the CSRA and the Rehabilitation Act for purposes of enforcing the settlement agreement. In the alternative, he argues that the district court erred in not exercising jurisdiction under the federal mandamus statute, 28 U.S.C. § 1361. We take up each issue in turn.

A.

■■■■ Mr. Blaney states—and the defendants do not disagree—that his is a "mixed case"; it involves both discriminatory and nondiscriminatory claims. In a such a case, a federal employee may obtain further review under Title VII of the claim he asserted before through trial de novo in the district court. 5 U.S.C. § 7703(b)(2) & (c); *Ballard v. Tennessee Valley Auth.,* 768 F.2d 756, 757 (6th Cir.1985). Mr. Blaney therefore argues that, because the CSRA provides for jurisdiction over mixed cases (at least under certain circumstances) coextensive with Title VII jurisdiction, the district court had jurisdiction under the CSRA to enforce a settlement agreement arising out of a mixed case. Mr. Blaney relies on cases that have held subject matter jurisdiction to exist under Title VII for the purpose of enforcing settlement agreements. *See EEOC v. Liberty Trucking Co.,* 695 F.2d 1038, 1044 (7th Cir.1982) (concluding that the district court had jurisdic-

ute, 28 U.S.C. § 1331, we need not set forth its analysis on those issues.

tion under Title VII to entertain the EEOC's attempt to enforce a conciliation agreement); *Robles v. United States,* No. 84–3635, 1990 WL 155545, at *1, 1990 U.S.Dist. LEXIS 9084, at *1 (D.D.C. July 20, 1990) (concluding for the purpose of determining attorney's fees that "a suit for breach of an agreement settling a job discrimination complaint against the U.S. federal government is an action or proceeding under Title VII"). He submits that the reasoning of those cases "applies with equal force in cases seeking enforcement of a CSRA settlement agreement in a case involving a discrimination claim." Appellant's Br. at 11.

We cannot accept Mr. Blaney's argument. The CSRA provides for Title VII jurisdiction in mixed cases only when certain conditions have been satisfied. One of those conditions is the existence of a "judicially reviewable action." 5 U.S.C. § 7703(b)(2). Here, there was no such final, appealable MSPB decision because, as the district court concluded, Mr. Blaney failed to exhaust his administrative remedies. Mr. Blaney may be correct in asserting that the MSPB would not have enforced the agreement after the breach because the administrative judge never entered the settlement agreement into the record for enforcement purposes. *See, e.g., Diamond v. United States Postal Serv.,* 51 M.S.P.R. 448, 450 (1991) (concluding that "the Board lacks jurisdiction to enforce the terms of the settlement agreement because the agreement had not been entered into the record"); *Dati v. Department of the Navy,* 41 M.S.P.R. 397, 401 (1989) (stating that "the Board retains jurisdiction to enforce the terms of a settlement agreement accepted into the record"); *see also Schultze v. Department of the Army,* 57 M.S.P.R. 250, 254 (1993) (stating that the "Board has no authority to invalidate a settlement agreement that has not been incorporated into the record"). However, although somewhat structurally complex, the

regulations make clear that a party who wishes the MSPB to retain jurisdiction over the case to ensure compliance with a settlement agreement must have that agreement entered into the record. *See* 5 C.F.R. § 1201.41(c)(2)(i) & (ii);[2] *see also Harris v. United States Postal Serv.,* 44 M.S.P.R. 547, 549 (1990) (stating that "in order for the agreement to be enforceable, either party must first make a motion to have the settlement entered into the record"). Thus, once Mr. Blaney commenced proceedings in the MSPB under the CSRA, he had to complete the CSRA's administrative process in order to assert jurisdiction under the CSRA in federal court.

Moreover, even if we were to assume that the defendants' breach of the settlement agreement constituted a judicially reviewable action for which Mr. Blaney could seek review in federal court, Mr. Blaney failed to seek review of the action in a timely manner. Under 5 U.S.C. § 7703(b)(2), review of a mixed case in the district court "must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action." Mr. Blaney, however, brought this action in May 1992, well over two and one-half years after the September 1989 breach of the settlement agreement. Mr. Blaney argues that the defendants' failure to plead statute of limitations as an affirmative defense in their answer constitutes a waiver of the matter under Federal Rule of Civil Procedure 8(c). However, because the defendants raised the issue in their motion to dismiss and the district court chose to recognize the timeliness issue as a defense, the defendants cannot be deemed to have waived the issue. *See DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 334 (7th Cir.1987) (stating that "when parties argue an affirmative defense in the district court, technical failure to plead the defense is not fatal").[3] Moreover,

---

**2.** In part, 5 C.F.R. § 1201.41(c)(2) states:

(i) If the parties offer the agreement for inclusion in the record, and if the judge approves the agreement, it will be made a part of the record, and the Board will retain jurisdiction to ensure compliance with the agreement.

(ii) If the agreement is not entered into the record, the Board will not retain jurisdiction to ensure compliance.

**3.** *See also Dresser Indus., Inc. v. Pyrrhus AG,* 936 F.2d 921, 928 (7th Cir.1991) (same); *Bank Leumi Le–Israel v. Lee,* 928 F.2d 232, 235 (7th Cir.1991) (same). *Accord, Sauers v. Salt Lake County,* 1 F.3d 1122, 1129 (10th Cir.1993) (relying on *DeValk* in holding that "because plaintiff had knowledge of the defense before trial, [the defendant's] failure to plead it was not reversible er-

although a time limit like the one in § 7703(b)(2) is not jurisdictional, *see White v. Bentsen,* 31 F.3d 474, 475 (7th Cir.1994), Mr. Blaney has offered no reason—either to the district court or to us—for the lengthy delay in bringing this action, much less one that might justify the delay under the doctrines of equitable tolling or equitable estoppel, *see id.* at 475.[4]

Finally, Mr. Blaney argues that, because he filed his mixed case more than 120 days after he filed his original appeal with the MSPB and the MSPB issued no judicially reviewable action in the interim, jurisdiction exists under 5 U.S.C. § 7702(e)(1)(B). That section provides that, if after 120 days "following the filing of an appeal with the Board ... there is no judicially reviewable action," an action can be brought "to the same extent and in the same manner" as provided in Title VII. Here, however, no judicially reviewable action resulted within 120 days of Mr. Blaney's original filing because the administrative judge dismissed the case as the result of the parties' settlement agreement. Mr. Blaney cannot now rely upon a statute that "was designed to prevent the MSPB and its administrative law judges from dragging their feet and from effectively precluding judicial review" as "an escape valve" by which to assert federal jurisdiction. *Vinieratos v. United States Dep't of the Air Force,* 939 F.2d 762, 774 n. 11 (9th Cir.1991). To allow a litigant such as Mr. Blaney to side-step the requirement of a judicially reviewable action of the MSPB "would eviscerate the exhaus-

tion requirement so that the mere passage of time would be the only precondition to judicial review." *Id.*

### B.

■ Mr. Blaney argues in the alternative that the district court erred in not exercising jurisdiction under the federal mandamus statute, 28 U.S.C. § 1361.[5] He correctly points out mandamus jurisdiction can be invoked only when the plaintiff has a clear right to the relief sought, the defendant has a clear duty to perform, and no other adequate remedy is available. *See Scalise v. Thornburgh,* 891 F.2d 640, 648 (7th Cir.1989), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1815, 108 L.Ed.2d 945 (1990); *Homewood Professional Care Ctr. v. Heckler,* 764 F.2d 1242, 1251 (7th Cir.1985). Although Mr. Blaney acknowledges that an action for specific performance of a breached contract does not ordinarily provide a basis for mandamus jurisdiction, he submits that the defendants' failure to proffer any justification for their breach of the settlement agreement makes his case an exception to the rule. Further, he argues that the defendants' contention that mandamus jurisdiction cannot be exercised when the relief sought does not stem from duties arising out of the Constitution or a federal statute or regulation has no basis in the mandamus statute itself and should be rejected.

■ We cannot accept Mr. Blaney's contentions. An action under § 1361 must be

---

ror"); *Bull's Corner Restaurant,. Inc. v. Director, Fed. Emer. Mgmt. Agency,* 759 F.2d 500, 502 (5th Cir.1985) (" 'Where [an affirmative defense] is raised in the trial court in a manner that does not result in unfair surprise, ... technical failure to comply precisely with Rule 8(c) is not fatal.' ") (citation omitted).

4. The doctrine of equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of a claim." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1990), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991); *see also Tregenza v. Great Am. Communications Co.,* 12 F.3d 717, 721 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994); *Smith v. City of Chicago Heights,* 951 F.2d 834, 839 (7th Cir.1992). The doctrine "does not assume a wrongful—or any— effort by the defendant to prevent the plaintiff

from suing." *Cada,* 920 F.2d at 451. By contrast, the doctrine of equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Id.* at 450–51; *see also Smith,* 951 F.2d at 840. Both of these "[t]olling doctrines stop the statute of limitations from running even if the accrual date has passed." *Cada,* 920 F.2d at 450. Because Mr. Blaney has offered no explanation concerning the lengthy delay in bringing a suit in federal court, neither tolling doctrine can apply.

5. 28 U.S.C. § 1361 provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

one against the officer in his personal capacity and not against the office, i.e., the sovereign. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88, 69 S.Ct. 1457, 1460–61, 93 L.Ed. 1628 (1949). However, if a plaintiff seeks to compel an officer to perform a contractual duty not dictated by the terms of his authority under either the Constitution or a federal statute or regulation, it is not a suit against the officer in his personal capacity to perform his duties under the law, but rather a suit against his office. *See id.* at 695, 69 S.Ct. at 1464 (holding that "if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign"); *see also Bobula v. United States Dep't of Justice*, 970 F.2d 854, 860 (Fed.Cir. 1992) (holding that "§ 1361 cannot provide jurisdiction where the duty alleged is merely a contractual duty unsupported by the Constitution, a statute, or a regulation"); *Save the Dunes Council v. Alexander*, 584 F.2d 158, 162 (7th Cir.1978) (stating that "the judiciary cannot compel through writ of mandamus a federal official to perform any function unless the official is clearly directed by law to perform such a duty"). In this case, Mr. Blaney's attempt to enforce the settlement agreement via the mandamus statute "amounts to a suit for specific performance against the United States." *Bobula*, 970 F.2d at 861. The district court therefore properly declined to extend § 1361 mandamus jurisdiction over the matter.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.